Filed 9/30/13  P. v. Simon CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>HERMILO SALTO SIMON,<br><br>    Defendant and Appellant. | F062736<br><br>(Super. Ct. No. MF50809)<br><br>**OPINION** |

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Merced County.  Marc A. Garcia, Judge.

Aaron Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jamie A. Scheidegger, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Wiseman, Acting P.J., Levy, J. and Kane, J.

## INTRODUCTION AND FACTS

On November 23, 2008, 10.6 grams of methamphetamine was found secreted inside the truck appellant Hermilo Salto Simon was driving. He was convicted after court trial of transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a)). Special allegations that appellant suffered three prior narcotics convictions and served two prior prison terms were found true. (Health & Saf. Code, § 11370.2, subd. (b); Pen. Code, § 667.5, subd. (b).)[1] He was sentenced to an aggregate term of eight years' imprisonment.

Appellant argues the court erred by denying his motions to suppress evidence and to substitute counsel (*People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*)). We are not convinced and will affirm the judgment.

## DISCUSSION

### I. The Suppression Motion Was Properly Denied.

#### A. Facts.

On November 15, 2010, appellant filed a motion to suppress evidence found inside his truck. (§ 1538.5.)

The suppression motion was heard on November 22, 2010. Merced County Deputy Sheriff Preston Sanchez was the only witness.[2]

Sanchez testified that he and his partner were patrolling the Merced area in a marked police vehicle on the morning of November 23, 2008. At approximately 9:10 a.m. he observed that the brake lights of the truck that appellant was driving were not functioning. Sanchez initiated a traffic stop. As appellant pulled the truck to the side of the road, Sanchez observed appellant's head move to the right and drop below the level

---

[1]     Unless otherwise specified all statutory references are to the Penal Code.

[2]     Solely to enhance readability, titles (e.g., deputy) will be omitted after the initial reference. No disrespect is intended or implied by this informality.

of the window for a few seconds. This furtive movement made Sanchez suspicious that appellant was either hiding or retrieving a weapon or narcotics. Sanchez asked appellant about his downward movement towards the passenger area. Appellant said that he "was retrieving a makeup bag on the floor" and pointed to the right side of the vehicle. After asking for and receiving appellant's driver's license and registration, Sanchez informed appellant that he intended to issue a citation for the nonfunctioning brake light. (Veh. Code, § 24603, subd. (b).) For officer safety, Sanchez asked appellant to step out of the vehicle and asked appellant's consent to search the truck. Appellant refused to consent to a search.

Sanchez radioed for Merced County Deputy Sheriff Mark Taylor and his canine partner to respond to the scene. At this point approximately 5 to 10 minutes had elapsed from the time Sanchez initiated the traffic stop. Taylor arrived 10 to 15 minutes later. During the interval Sanchez wrote a ticket for the nonfunctioning brake light. It ordinarily takes Sanchez between 5 and 15 minutes to write a ticket. At the time Sanchez radioed for Taylor, he had not yet checked the validity of appellant's driver's license and registration through dispatch.

Taylor and the canine walked around the truck for approximately one to two minutes. The dog alerted to the driver side window area of the truck. Taylor opened the front door of the truck and the canine entered the truck. The canine alerted on the front center console.

Based on the canine's alert, Sanchez and his partner searched the inside of the truck. A small box was discovered secreted inside a cavity underneath the front center console. Two scales and several plastic baggies were found inside the box. The baggies contained a total of 10.6 grams of methamphetamine. There was residue of a crystallized substance consistent with methamphetamine on the scales. A makeup bag was not found inside the truck.

3.

Defense counsel's arguments on the suppression motion were continued to December 6, 2010. Defense counsel raised two challenges to the constitutionality of the search: (1) there was not a valid officer safety concern, and (2) the detention was unduly prolonged. After argument, the court orally found that "the detention was not longer than twenty-five minutes, and under ... all the surrounding circumstances, I don't believe … that's an unreasonable or prolonged detention at all." The court took the matter under submission.

On December 15, 2010, the court issued a written ruling denying the suppression motion. The court determined that appellant was lawfully ordered to exit his vehicle and the detention was not unreasonably prolonged. It found that appellant's "furtive movements provided Deputy Sanchez with reasonable suspicion of wrongdoing which justified prolonging the detention for several minutes while he called and then wait[ed] for Officer Taylor and his canine to arrive on scene." (Fn. omitted.) The court found that a 10 to 15 minute wait for Taylor to arrive was reasonable under the circumstances, as was the one to two minute period that elapsed while Taylor conducted a canine sniff around the vehicle. Next, the court determined that the canine sniff did not violate the Fourth Amendment and, once the dog indicated that the truck contained contraband, Sanchez had probable cause to search the vehicle.

**B.     The detention was justified and was not unduly prolonged**.

**1.     There was a rational suspicion of activity out of the ordinary and suggestion that the activity was a crime.**

Appellant contends the court erred by denying his suppression motion because the seized evidence was the product of an illegally prolonged detention. We disagree. In light of all the circumstances, appellant's detention was neither unreasonable nor illegally prolonged.

The standard of appellate review is undisputed:

> "An appellate court's review of a motion to suppress evidence is also governed by well-settled principles. The trial court's factual findings relating to

4.

the challenged search or seizure, 'whether express or implied, must be upheld if they are supported by substantial evidence.' [Citation.] '"The trial court also has the duty to determine whether, on the facts found, the search was unreasonable within the meaning of the Constitution." [Citation.] Because "that issue is a question of law," the appellate court is not bound by the substantial evidence standard in reviewing the trial court's decision thereon. Rather, … in such review it is "the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." [Citation.] On that issue, in short, the appellate court exercises its independent judgment.' [Citations.]" (*People v. Loewen* (1983) 35 Cal.3d 117, 123.)

A routine traffic stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop. (*People v. McGaughran* (1979) 25 Cal.3d 577, 586.) "Circumstances which develop during a detention may provide reasonable suspicion to prolong the detention." (*People v. Russell* (2000) 81 Cal.App.4th 96, 102.) Circumstances short of probable cause may justify a temporary detention if: (1) there is a rational suspicion, by the peace officer, that an activity out of the ordinary has occurred; (2) there is some indication to connect the person under suspicion with the unusual activity; and (3) there is some suggestion that the activity is a crime. (*People v. Henze* (1967) 253 Cal.App.2d 986, 988.)

The facts of the case before us support a rational suspicion of criminal activity. Appellant did two things that led the investigating officer to reasonably suspect that appellant had committed a crime. First, appellant ducked down towards the passenger side floorboard immediately after Sanchez activated the patrol vehicle's red light. This furtive gesture led Sanchez to suspect that appellant was hiding either a weapon or illicit drugs under the passenger seat. Second, when Sanchez asked appellant why he ducked below the seat, appellant replied that he was retrieving a makeup bag from the floor. No makeup bag was visible in the truck.

In *People v. Flores* (1972) 23 Cal.App.3d 23 (*Flores*), the appellate court found that the defendant's furtive gesture of leaning towards the passenger side floorboard, when combined with her acts of driving out of a dark alley in an area where there had

5.

been recent burglaries, and driving for an additional block and a half after the officer signaled the defendant to pull over, led to a rational suspicion that a crime had occurred.

In this case, we have a similar gesture as in *Flores*, in addition to a lie about a makeup bag. As in *Flores*, the combined facts in this case created a rational suspicion that appellant committed a crime.

Appellant relies on *People v. McGaughran, supra,* 25 Cal.3d 577, which held that a furtive gesture alone cannot justify a prolonged detention. (*Id.* at p. 590.) He reasons that since a furtive gesture alone cannot justify a prolonged detention, Sanchez had no right to prolong appellant's detention. This argument fails because, as we have explained, the detention was not based solely on appellant's furtive movement and was not unduly prolonged.

### 2. The length of the detention was reasonable.

Appellant argues that since he was detained for longer than it would have taken to write a traffic citation the detention was unreasonably long. This argument implies that there was a lengthy wait for Taylor to arrive with the dog. Sanchez's testimony at the suppression hearing contradicts this implication. Sanchez testified that it ordinarily takes 5 to 15 minutes to write a traffic citation. Sanchez began to write the citation after he called Deputy Taylor to the scene. Taylor arrived within 15 minutes. Since Taylor arrived within the period of time that it ordinarily takes for Sanchez to write a citation, the detention was not prolonged by Sanchez's call for a canine unit. The detention was only prolonged the one to two minutes it took for the canine to walk around the vehicle and alert the officers to the presence of the drugs. (See, e.g., *People v. Russell, supra,* 81 Cal.App.4th at p. 102 [25 minute detention was reasonable given a rational suspicion of criminal conduct].) We are not presented with a situation such as was considered in *People v. Gomez* (2004) 117 Cal.App.4th 531. In that case, the defendant was detained for almost two hours after a traffic stop while waiting for a canine unit. The *Gomez* court

decided that a two-hour detention was unreasonable. (*Id.* at p. 538.) Here, there was no lengthy wait for the canine unit.[3]

### C.   The canine's alert provided probable cause to search the vehicle.

A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment. (*Illinois v. Caballes* (2005) 543 U.S. 405, 409.) It is equally well-settled that an alert by a narcotic sniffing dog provides probable cause for a search. (*People v. Bautista* (2004) 115 Cal.App.4th 229, 236; *Estes v. Rowland* (1993) 14 Cal.App.4th 508, 529.)

Appellant argues that the dog's alert did not provide probable cause to search the truck because the People did not prove that the dog was trained to search for drugs. This issue was not preserved for appellate review.

> "[U]nder section 1538.5, as in the case of any other motion, defendants must specify the precise grounds for suppression of the evidence in question, and, where a warrantless search or seizure is the basis for the motion, this burden includes specifying the inadequacy of any justifications for the search or seizure.… Defendants cannot ... lay a trap for the prosecution by remaining completely silent until the appeal about issues the prosecution may have overlooked." (*People v. Williams* (1999) 20 Cal.4th 119, 130-131.)

At no point during the proceedings below did appellant challenge the dog's training. Neither did appellant argue that the absence of evidence on this point precluded the development of probable cause to search the truck. Since appellant did not raise this factual issue at the trial court level, he is prohibited from asserting it for the first time on appeal. (*People v. Williams, supra*, 20 Cal.4th at pp. 130-131.)

---

[3]   In any event, even if there had been a 10 to 15 minute wait for Taylor to arrive, this would not constitute an unreasonably prolonged detention in light of the entirety of the circumstances. (See *People v. Russell, supra,* 81 Cal.App.4th at p. 102.)

In sum, we hold that appellant's detention was based on reasonable suspicion and was not unreasonably prolonged. The dog's alert provided probable cause to search the truck. Therefore, the court properly denied the suppression motion.

## II.  The *Marsden* Motion Was Properly Denied.

### A.  Facts.

On February 18, 2011, four days before trial, appellant orally requested a *Marsden* hearing. The court conducted the requested hearing.

Appellant stated that defense counsel did not spend enough time with him, yelled at him and treated him disrespectfully. He complained that all defense counsel did was to try to scare him into taking a deal. Appellant said that he wanted to be placed on probation and receive drug treatment but defense counsel erroneously told him that he was not eligible for probation. Appellant said that he had to talk defense counsel into filing the suppression motion and complained that the motion was heard by a different judge. Appellant acknowledged that defense counsel sent an investigator to speak with him but complained that the investigator left in the middle of their conversation.

Defense counsel stated that he met with appellant regularly and was prepared for trial. Defense counsel acknowledged that he became frustrated with appellant during a conference that morning and they exchanged "heated words." Defense counsel said, "[W]e're at the end of two years of talking about the same thing, and he was pretending like he doesn't understand some things."

The court explained that appellant was statutorily ineligible for probation. If appellant went to trial and lost, he was going to go to prison. The court said that appellant was mistaking defense counsel's "intentions of wanting the best for you with his disrespecting you." Also, defense counsel followed the correct procedure when he filed the suppression motion. The court said that defense counsel was "at the top of the food chain as far as competence" and "is probably the most successful attorney in the county over the last two to three years with ... jury verdicts." The court found that the

relationship between defense counsel and appellant was not "broken down" and denied the *Marsden* motion.

**B.    The record does not clearly show that appellant and counsel became embroiled in such an irreconcilable conflict that ineffective representation was likely to result.**

Appellant argues that the court abused its discretion by denying his *Marsden* motion.  However, each of appellant's complaints failed to provide sufficient grounds to substitute appointed counsel.  Therefore, we conclude that appellant failed to establish that the court abused its discretion by denying the *Marsden* motion.

> "'When a defendant seeks substitution of appointed counsel pursuant to *People v. Marsden*, *supra*, 2 Cal.3d 118, "the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance.  A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result."'  [Citation.]  'A trial court should grant a defendant's *Marsden* motion only when the defendant has made "a substantial showing that failure to order substitution is likely to result in constitutionally inadequate representation."'  [Citation.]
>
> 'We review the denial of a *Marsden* motion for abuse of discretion.'  [Citation.]  'Denial is not an abuse of discretion "unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel."'  [Citation.]"  (*People v. Streeter* (2012) 54 Cal.4th 205, 230 (*Streeter*).)

At the *Marsden* hearing, the court allowed appellant to explain the reasons why he believed his attorney should be replaced.  (*Streeter, supra*, 54 Cal.4th at p. 230.)

During the hearing appellant emphasized his inability to get along with appointed counsel.  Regardless, inability to get along with appointed counsel is not sufficient to require substitution of counsel. "'If a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute

9.

counsel, defendants effectively would have a veto power over any appointment, and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law.'" *(People v. Myles* (2012) 53 Cal.4th 1181, 1207.)

Appellant's complaints about how infrequently his attorney met with him are not sufficient to show irreconcilable conflict. Appellant was concerned that appointed counsel would only talk to him for "five minutes before we go to court" and that his attorney's investigator left half way through an interview and never returned. These facts did not compel the court to grant a *Marsden* motion because a complaint that defense counsel rarely visits the defendant "does not justify substitution of counsel." (*People v. Myles, supra*, 53 Cal.4th at p. 1208; *People v. Hart* (1999) 20 Cal.4th 546, 604.)

Appellant displayed concern over tactical disagreements he had with appointed counsel. "[T]actical disagreements between a defendant and his attorney or a defendant's frustration with counsel are not sufficient cause for substitution of counsel." (*Streeter, supra,* 54 Cal.4th at p. 231.) Therefore, appellant's disagreement with counsel over the suppression motion and the possibility of a favorable negotiated plea agreement are not sufficient cause for substitution of counsel.

Furthermore, "[a] trial court is not required to conclude that an *irreconcilable* conflict exists if the defendant has not made a sustained good faith effort to work out any disagreements with counsel ...." *(People v. Crandell* (1988) 46 Cal.3d 833, 860, overruled on other grounds in *People v. Crayton* (2002) 28 Cal.4th 346, 364-365.) The record lacks evidence showing that appellant made such a sustained effort.

*United States v. Williams* (9th Cir. 1979) 594 F.2d 1258, which is relied upon by appellant, is distinguishable. In *Williams*, the attorney and his client were described as being, "at serious odds and had been for some time." (*Id.* at p. 1259, fn. omitted.) The dispute was so extreme and prolonged that the defendant chose to represent himself at trial rather than allow appointed counsel to continue to represent him. In contrast, the dispute in this case was not serious or lengthy. Defense counsel said that there was only

10.

one contentious exchange between himself and appellant, which occurred on the morning of the *Marsden* hearing.  Also, decisions by federal district courts are not binding on California appellate courts.  (*People v. Williams* (2013) 56 Cal.4th 630, 668; *Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 69.)

In *Streeter, supra*, 54 Cal.4th 205 and *People v. Myles, supra*, 53 Cal.4th 1181, the defendants each filed an unsuccessful *Marsden* motion arguing that defense counsel should be replaced due to tactical disputes, insufficient interaction and lack of trust.  In each case, the California Supreme Court upheld the trial court's ruling because there was inadequate proof that the conflict was irreconcilable and likely to result in constitutionally ineffective assistance.  (*Streeter, supra*, 54 Cal.4th at pp. 230-231; *People v. Myles, supra*, 53 Cal.4th at pp. 1206-1208.)  Similarly, in this case appellant's complaints were insufficient to show that he and defense counsel were embroiled in such an irreconcilable conflict that ineffective representation was likely to result.

For all of these reasons, we hold that denial of the *Marsden* motion was not an abuse of discretion.

## DISPOSITION

The judgment is affirmed.